Thank you, Judge. Good morning, Your Honors, and may it please the Court. My name is Katherine Parrish, and I'm here on behalf of Rasheik Harris. I want to start, the way I want to proceed today, first I want to clarify some issues that were raised with regard to Ground 3 in the original brief. Then I intend to move on to talk a little bit about Ground 4, which was raised recently in a supplemental brief filed this Monday based on some new developments in the law. And after that, as time permits, I'll move on to Grounds 1 and 2 and obviously answer whatever questions the Court may have. As to Ground 3, some of the most fundamental evidence in this case was the testimony of the owner of the vehicle where the contraband in this case was found. Now, as this Court is well aware, Ms. Smith never actually testified. Her statements came in through the statements of multiple police officers who had been investigating this case. Now the United States, in its briefing, claims that this was invited error because during cross-examination of one of the detectives who was the third detective to testify, Mr. Harris' attorney asked a question which basically brought out the testimony that Ms. Smith had previously said, had at one point said, that the gun that was found was not hers. And so the United States is arguing that this was invited error. However, I want to clarify that this issue was actually brought up long before that. It was first brought up in the opening statement of Mr. Harris' attorney. However, opening statements are not evidence. The second time it was brought up was in the testimony, in the direct exam testimony, of the first witness who testified, Mr. Benjamin Quick. And there was no objection to the testimony at that point, but it was the first time that the evidence came in that Ms. Smith had denied that, or said she didn't know anything about where the judge was, the gun was. So this was not invited error. Mr. Harris' attorney was not the first person to bring this up in the context of evidence and in the context of testimony. With regard to the portion of the testimony that the United States refers to, where it's asked about in cross-examination, on direct examination, Detective Penrod had been asked whether they had any reason to suspect that Ms. Smith had essentially what And so then on cross-examination, Mr. Penrod had said, no, we had no reason to believe that, despite the fact that the drugs had been found within Ms. Smith's purse, and that at one point, Ms. Smith had said in a statement to them during her interrogation, she maintained during her interrogation, that the gun was hers. So this was a big issue in the case. And this idea that Ms. Smith had said previously that the gun was not hers, was fundamental because the gun was found in her vehicle and she was the primary only suspect, other suspect. And this came in the form of hearsay and in the form of testimony that was never cross-examined and that was subject to the confrontation clause. And because of that, Your Honor, this was not invited error. And again, we're not talking about a matter of just mere hearsay. We're talking about a matter of a confrontation clause violation. The statements were originally made in the, there were testimonial statements in the context of a police interrogation. And for that reason, Your Honors, we believe that a reversal is required as to ground three. I wanted to clarify some of those transcript references because I think there was some confusion in the briefing as to whether it was, where the issue was initially brought up. And I think those transcript references made it clear that initially the issue was brought up with regard to indirect examination testimony of the first detective who testified. And then again, when it was brought up by defense counsel, it was brought up in response to a question asked on cross-examination. If the court doesn't have any further questions on that particular issue, I want to move on to speak a little bit about the issues in a supplemental brief that was filed earlier this week. The jury believed, as did the prosecutor, the defense attorney, the judge, and Mr. Harris, that the jury had found Mr. Harris to be guilty of being a felon in possession of a firearm. As we are all aware, at this point, it did not because it failed to find a fundamental element of that offense. It was not required to do so in the context of the instructions, and it failed to find that fundamental element. Without the jury having found that fundamental element, it cannot be said that they found him guilty of that offense. Counsel, I know you just submitted this brief earlier this week. I'm wondering if it matters that this argument wasn't made in your reply brief. I understand you filed it when the Cooper cert came out just recently, but it seems to me this is an argument that could have been made in your reply brief based on Rahoff, and I'm wondering what your view on that is, whether there's a waiver issue or not. Obviously, I'm assuming you don't think so, but I'd like your comments on that. Sure, Your Honor, and we did file a motion for leave to supplement, which this court granted, and I kind of took this court granting that motion to supplement as a motion to, as kind of accepting the brief. I'll say two things on that. One is the Cooper case did just come down December 9th, and I do think that changed the landscape to some extent. And there was actually a Johnston case in That was just a cert grant, right? I mean, there was no ruling on the merits or even a suggestion of what the Court of Appeals there was supposed to do, is my recollection. You're right, it was a cert grant. There was no ruling on the merits. I do think in light of what the cert petition was, I think the Supreme Court is kind of aware of how these decisions are going to be taken. I think in light of what the Supreme Court, what it was, it was a statement that the Supreme Court was saying, we need to look at this again. Right, I get that, but what about the, if you look at Rahoff himself and you look at it, it pretty much points out that this is going to open up a whole broad swath of discussion, including discussion that goes far beyond the cases that are just in the pipeline. And indeed, if you look at what the law, the sentencing blogs that are around the country, they've been talking about Reha for months. So the question is, how did Cooper really change anything, and why weren't you aware of it? No, no, we had not raised the issue in the original appellate brief. And I think that's, it was initially the reason it was not raised in the reply brief. If I should have raised that, that was my issue and not my client's. And I suppose that's what courts may be dealing with in 2255. I think for me personally, the remand in the Cooper case brought to light some issues and seemed to be a statement of the Supreme Court that called into question this Court's decision in Hollingshead, which frankly falls pretty closely to the facts at hand in Mr. Harris's case. So in terms of the strategic decision of whether it should have been raised earlier, I suppose that's kind of a question for 2255. I think the reality is this case right now is on direct appeal. And so at the time that Reha was decided, at the time that Cooper was decided, and there's another remand out of the Supreme Court, which is the Johnston case, at the time those cases were decided, Mr. Harris's conviction was not yet really final under the law. And courts do make a distinction in a lot of these cases between being on direct appeal, where the constitutionality and the direct appeal issues and the positions of the judge are still under review, and being in post-conviction. I think in post-conviction the issues become more issue, post-conviction or habeas, I think, in federal habeas. I think that's a different set of issues. Well, I think you read way, way too much into Cooper. I think the Supreme Court itself has said on multiple occasions that if all they do is grant and vacate and remand for further consideration, we're not to read anything into that beyond the fact that they want the circuit court to reconsider it. But going to the merits, are you basic, in this case, given his history, we would almost have to say if it's a jury trial, it's almost to the level of structural error. Is that essentially your position? Yes, Your Honor, it is. And I think it's not a matter of just the Sixth Amendment right to jury trial. There's a matter that the grand jury, in indicting him, also did not find that. There's a matter that my client made a decision not to testify on his own behalf. And when he made a decision, he didn't know that if he could contest that element of the offense with his testimony, that that would be a reason for the jury finding him not guilty. Well, he wouldn't have done that. I mean, let's be realistic about it. I mean, his record is so horrible that there's no way that he could get up there with a straight face and say that he didn't know he had been convicted. Actually, I think he has one prior conviction for felon of possession, doesn't he? He had, I think the prior gun conviction, I believe, was a state court conviction. But still, he had previously been convicted of being a felon of possession. So for him to get up there and say he didn't know he was a felon would have been, he would have been savaged on cross-examination. I mean, that's not a realistic position to take. I can understand certainly on these set of facts that it's difficult to imagine there was a situation where his testimony may have changed that. But I do think there's a larger issue with saying that it's okay if the jury didn't find these elements of the offense because we know he was probably guilty anyway. And that exists at every phase in the proceeding. Looking at that, I want to leave a little bit of time and we're about to run out of time. So I'll let my opposing counsel speak. Thank you. Thank you. Mr. Koster. Good morning. My name is Jack Koster on behalf of the government. And I would like to begin by clarifying this issue that Judge Malloy alluded to with this Cooper case. Appellants suggest that Cooper somehow calls this Court's opinion in Hollingshead into question. And I just wanted to explain exactly what the Cooper case is all about. That was a case coming out of the 11th Circuit. And the defendant in that case, he was convicted. He challenged his sentence on appeal. This was pre-rehave. The 11th Circuit affirmed the sentence in an unpublished procurium opinion. Nine days later, nine days after the 11th Circuit affirmed the sentence, rehave was decided by the Supreme Court. So he was still within the time to file a petition for certiorari in the Supreme Court. And he did so. He raised the rehave issue before the Supreme Court in his cert petition. Now, the government conceded that the case needed to be remanded back to the 11th Circuit. The solicitor general simply said they filed a one-page statement recommending that the case be sent back to the 11th Circuit so that the Court of Appeals could address the rehave issue in the first instance. And so that, this cert grant in no way calls the decision of this Court in Hollingshead into question in any way. And I think this case is easily resolved by simply applying Hollingshead. Of course, Hollingshead was also a situation where there was a jury trial. And Chief Judge Smith, in his opinion, it was reviewed under the plain error standard. And this Court held that the first two prongs of plain error standard did apply. But they were unable to show the other two prongs, namely that it affected the defendant's substantial rights or it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. And what the Court held in Hollingshead was the defendant had been sent to prison on two separate occasions. He was sentenced to Federal prison for 78 months. He served, I think, over half of that sentence. And then on supervised release, he was revoked and sent back to prison. So there's no way he would not have known that he was a convicted felon. And particularly in the context of this case, the government introduced exhibits of Mr. Harris' felony convictions. Exhibits 10, 11, 12, and 13. Those were conviction documents from all of his felony convictions. And it went back to 2001 when he was convicted of second-degree burglary. He was sentenced to three years in prison. He was released on parole three separate times each time he was revoked and sent back to prison. In 2004, he was convicted of selling crack cocaine near an elementary school. He was sentenced to 10 years in prison. He was paroled after serving about half of that time, after serving about five years. While he was on parole, he picks up a state conviction for felon in possession of a firearm. And he's sent back to prison for four years. And then when he's released from prison again, he gets another felony conviction for bringing marijuana into a jail facility. And he was sentenced to three years. Now, all of those conviction documents were admitted at the trial. So there is no way that this could have possibly affected the outcome of the proceedings. I do want to get back to this hearsay issue. And I can clarify for the Court, the issue of Ms. Smith's statements was first brought up by defense counsel in the opening statement. Now, Ms. Smith, as appellant noted, she was the front seat passenger in this car. And she gave conflicting statements to law enforcement officers. At the scene of the stop, she said she didn't know anything about a gun in the car. She didn't know anything about anything illegal being in the car. And then later at police headquarters, she told the police that the gun belonged to her. Now, in the opening statement, defense counsel said, quote, officers investigating this case found out that Ms. Smith was the owner of the gun. And then a short time later, she also explained to them that it was, in fact, her gun. Now, the government did not mention any of Ms. Smith's statements in their opening statement. It was first brought to light during the opening statement. And this notion that the invited error doctrine doesn't apply to comments made in opening statements, that's simply not the case. This Court has repeatedly held that you can open the door to otherwise inadmissible evidence during your opening statement. Just earlier this year, Judge Strauss, in a case called United States v. Spotted Bear, this is at 920 F. 3rd 1199, that Court reaffirmed that when a criminal defendant creates a false or misleading impression on an issue, the government may clarify, rebut, or complete the issue with what would otherwise be inadmissible evidence, including hearsay statements. Now, the statement raised in appellant's opening brief, this was brought to light on redirect. The statement that they're complaining about was brought to the jury's attention only on redirect by the government. Detective Whitney was the third officer to testify in the trial. On direct examination, the prosecutor did not reference any of Ms. Smith's statements. And it was on cross-examination, defense counsel said, question. But at a point, she claimed ownership of the gun, correct? Answer, she claimed ownership at headquarters, yes. And then moments later, the defense attorney came back to it, he said, question. And Ms. Smith maintained that it was her gun, correct? Answer, that's correct. So on redirect, obviously the government was allowed to clarify this issue. And on redirect, the prosecutor asked, question. Now you said that Ms. Smith later said that was her gun, is that correct? Answer, yes she did. Question, she had a different story initially. Answer, initially that she didn't know about a gun. At that point, the defendant objected to hearsay and it was overruled because he had opened the door to the otherwise inadmissible hearsay during his cross-examination. What's your response to Ms. Parrish's argument that you indirectly opened it on direct examination by saying, well, did she have a guilty mind or something to that effect? The statement she was referring to with that statement was Detective Penrod's testimony, who testified after Detective Whitney. He testified after Detective Whitney. And to clarify here, Officer Quick, he was the second officer to testify in the trial. And on direct examination, the government asked the question, quote, referring to Ms. Smith, did she appear surprised there was a gun found in the vehicle? And the officer replied, yes, I was talking to Ms. Smith. She advised she did not know that there was a gun in the vehicle and she also told me there was nothing else illegal in the vehicle that she had knowledge of. And there was no objection raised to that particular statement. But as I mentioned before, this Court has repeatedly held that you can open the door and invite error during opening statement consistently over the years. I'd also like to, with the time, the point one in Appellant's brief concerns the reasonableness of the sentence. They complained that there was an inadequate explanation for the sentence. And I would, under the circumstances of this case, I think when you're looking at the explanation provided by the District Court, the District Court was obviously concerned about Mr. Harris' criminal history. And he did refer to that criminal history. But I think when you're reviewing the sufficiency of the District Court's explanation, it's important to look at all of the information before the District Court. Two points. Number one, this case involved a jury trial. The District Court was able to preside over that trial. The District Court saw and heard all of the evidence that was presented in the case. So it was very familiar with the facts. And point two, the District Court had the opportunity to review a very thorough PSR. Now, this pre-sentence report, it went into a tremendous amount of detail, both about the aggravating circumstances and also the mitigating factors. It went into incredible detail with respect to Mr. Harris' criminal history. And that's why these references by the District Court, the District Court at sentencing said, Mr. Harris, the prosecutor was correct that your criminal history is catching up to you. You're listed as a criminal history category of six, which is the highest. And you just got a lot of felony convictions on your record now. And frankly, had the guidelines been higher, I think it would be appropriate that you'd get more than 150 months. But I'll abide by the guidelines. And the District Court then imposed a presumptively reasonable top-of-the-guidelines sentence. The District Court expressly stated, and also in particular, the mitigating factors that were mentioned by counsel and that are set out in the pre-sentence report. Appellants spent a good deal of the opening brief arguing that the plain error standard of review should not apply to procedural challenges to sentences. But this Court has consistently held that if you fail to raise a procedural challenge at sentencing, that can only be reviewed for plain error. And that's binding circuit precedent. In fact, I think most federal courts of appeals throughout the country apply that same standard. And this just really underscores why the plain error standard applies to procedural challenges. Because if an objection had been made, then the District Court would have been in a position to clarify or further explain the reason for its sentence. And that's why I mentioned the District Court's comments here regarding the sentence. They need to be viewed in context of everything before the District Court. So had defense counsel objected to this sentence and said, well, Your Honor, we feel that that's an insufficient explanation. Under 3553C1, you're required to explain why you chose a sentence at a particular point within the guideline range. Then the District Court would have been in a position to further explain the basis of the decision. The District Court repeatedly referenced the felony convictions on his record. And when you review the PSR, you can see that this sentence was reasonable. Mr. Harris had a history going back to when he was a juvenile of committing very, very serious crimes. Paragraph 28 of the pre-sentence report, he had juvenile adjudications for robbery, stealing, probation violations, multiple arrests for assault, unlawful use of a weapon, resisting arrest. And then in 2001, his first felony conviction, he was sentenced to three years in prison for burglary. The PSR set out the facts of that case. This wasn't just a simple burglary where he broke into a house to steal some video games. Mr. Harris broke into a house with several accomplices. They set fire to the living room. And the whole purpose of it was to retaliate against the homeowner for cooperating with the police in a robbery investigation. He was paroled three times. Each time, he was sent back to prison. And then he was convicted of distributing crack cocaine near a school in 2004. He gets 10 years for that. After serving about half of that time, he's paroled. Then he gets the state conviction for felon in possession of a firearm. When he's paroled on that, he gets more convictions. And importantly, Mr. Harris was released from parole supervision on February the 9th of 2017. That was just one month before the instant offense. And not only that, the jury heard evidence at the trial under 404B that just five days before the instant offense, he was pulled over in the state of Illinois. And he had a gun in the vehicle at that time. So the district court was understandably concerned about Mr. Harris' consistent pattern of criminal activity over the course of 20 years. But the district court did go into detail saying, I think a key point is that it initially said it was inclined to impose a sentence above the guideline range based on that criminal history. It was initially inclined to impose an upward variance. But because of the mitigating factors that were highlighted by defense counsel and that were also referenced in the pre-sentence report, the district court decided to essentially ground the sentence, to bring the sentence back down to a sentence at the top of the guideline range, which of course is presumptively reasonable on appeal. If there are no further questions, I will rest. Thank you. Ms. Parrish? May it please the Court, Your Honors, just to clarify, the first reference to Ms. Smith saying that she didn't know about the gun was in page 99 of the transcript. That was the direct examination testimony of Benjamin Quick, who was the first witness to testify. The Court can look at the transcripts on that stuff, but I believe the witness order was Quick, Whitney, and then Penrod. And Penrod was the one who testified where it was brought up in cross-examination. I want to talk a little bit about the disposition in the Supreme Court of Cooper, because I think Mr. Costa brings up a good point, and I think there's a lesson in the procedural posture of Cooper that maybe answered a little bit of the question about whether the Court ought to consider this issue at this time. First of all, I think it is within the Court's discretion to do so. The supplemental brief was certainly filed late in the game. I think it's in this Court's discretion to do so. And I think what we saw the Supreme Court do in Cooper is illustrative of the importance of this issue. In the Supreme Court, this was not an issue that had been raised in the proceedings below. And the Supreme Court chose, again, to look at the case and to remand it on an issue that had not even been brought up. Again, that case was also, like this case, in direct appeal. Sorry, go ahead. Could you tell me how Hollingshead is implicated by Cooper? I think Hollingshead is implicated by Cooper because Hollingshead applies this plain error review and it essentially says that he only seems to show some kind of prejudice, that if you can't show – essentially what Hollingshead said is if you can't show that there would have been reason to believe that he would have been found not guilty based on this element, it's not worthy of a remand. And I think Cooper being a guilty plea that got all the way up there on a guilty plea undermines that significantly. Thank you. Thank you.